## JAMES BOWMAN & AL., Demandants, *versus* SAMUEL WHITTEMORE.

Pleadings in review cannot be altered without consent. Heirs of a warrantor competent witnesses to prove the boundaries of land, if they have a release from the grantor. *Qu.*

THIS was a writ of entry of disseisin in the *post,* in [ * 243 ] which the demandants declared that their *ancestor, *Richard Palmer,* the father of the demandants, was seised of the demanded premises within fifty years, and that the defendant had not entry, unless after the disseisin of one *Miles Ward,* who disseised their ancestor, &c.

The plea was, that the defendant, *Whittemore,* was not guilty. The issue had been joined, a trial had, verdict for the defendant, and judgment accordingly, and the *present* was an *action* of review upon *that* judgment.

It was now proposed, by the counsel for the demandants, that the plea should be amended and made correct by pleading that *Ward* did not disseise the ancestor ; but as this could not be done without the consent of the defendant, it being an action of *review,* and as the counsel for the defendant would not consent to alter their plea, conceiving that they might lose some advantage resulting from the plea as it now stood, and as they also thought the action should

have been brought in the *per*, the cause proceeded to trial under the former pleadings.

The demandants claimed title to a tract of land, of which, their counsel contended, the demanded premises were a part, under a deed to their ancestor from *Timothy Pickering*, executed the 12th day of July, 1751, whose title they deduced by a chain of conveyances beginning in the year 1721, and then proved the actual possession of their ancestor from 1765 to 1786, when *Miles Ward* entered, claiming the demanded premises as his own.

The defendant claimed title to a tract of land (adjoining the tract of land claimed by the demandants by virtue of the deed of *Timothy Pickering*) under a regular chain of conveyances, beginning in the year 1671, by which the tract of land to which the defendant claimed title came to *Miles Ward* in the year 1773, by the deed of *David Kellum* and *Mary Gray*, and then [ * **244** ] deduced his own title from a deed executed, in the year 1798, by the heirs of *Miles Ward* to himself. This was a deed of release and quitclaim.

In this case, the dispute between the parties was as to the actual boundaries and division-line of the several tracts of land above mentioned; to prove which, the counsel for the defendant offered as witnesses two of the heirs of *Mary Gray*.

Objected to as interested, and as being in the situation of their ancestor, *Mary Gray*, who would not have been permitted to explain the *intent*, or prove the *extent*, of her own grant.

The defendant, in Court, released them from all demands which he might have against them on account of the covenants contained in the deed of their mother, *Mary Gray*, to *Miles Ward*, under whom the defendant claimed.

The demandant's counsel contended that this release did not make them competent; that the covenants in the deed of their mother, binding herself and her heirs to warrant and defend the land to her grantee, his heirs and *assigns*, running with the land, could not be discharged by the defendant, so as to operate against any future assignee of the estate, having no notice of such release; that if it were otherwise, a door would be opened to the grossest fraud, against which no care or caution would be a sufficient guard.

On the other side, it was said that nothing was more certain than that every person might release any right which he had; and the present case was compared to that of the release of a *right of way* to the *ter-tenant*.

SEWALL and THACHER, justices, thought that the release made the witnesses competent; that the whole right, both to the land and

the covenants, being *now* in the defendant, he might dispose of either as he thought proper; and that he might [ * 245 ] * therefore release his right in the covenants so as to operate against a future assignee of the estate.

SEDGWICK, J., *contra*, was of opinion, and principally for the reasons given by the counsel for the demandants, that such release could not operate against a future assignee of the estate without notice, and that covenants running with the land could never be extinguished as to *such* assignee, except by a *reconveyance* of the estate to the grantor. The release would undoubtedly bind the releasee and his heirs, but not his assignee. (1)

The witnesses were admitted.

*Parsons* and *Putnam* for the demandants. *Dexter* and *Jackson* for the defendant.

NOTE.—Quære whether, in this case, the defendant claiming under a deed of release and quitclaim, is such an assignee of *Mary Gray* as would enable him to maintain an action of covenant against her heirs. If he be not, then his grantee certainly could not.

---

(1) It is obvious that some of the benefits intended to be secured by the registry acts would be defeated by suffering the release of the present possessor of an estate to operate against subsequent assignees. Purchasers might be induced to buy the estate in reliance upon the covenants of former grantors, of which they might be deprived by secret releases. It was twice ruled by the late Ch. J. *Parsons*, in *Middlesex*, that a release unrecorded is not sufficient to remove the incompetency of a witness.